OPINION OF THE COURT
De Forest C. Pitt, J.
This proceeding initially came before this court as a CPLR article 78 proceeding challenging a declaratory ruling issued by the respondent which held that the petitioner was subject to regulation pursuant to the Environmental Conservation Law (ECL) and the regulations thereon in effect in the years of 1980 and 1981. Since the time of the original petition, the ECL and the regulations thereon have been significantly modified. Following these modifications, the petitioner brought a second petition for a declaratory ruling requesting a determination that it was *730 not subject to regulations under the current ECL and regulations of the Department of Environmental Conservation. The respondent, in his second declaratory ruling, determined that the petitioner was subject to regulation pursuant to ECL (art 27, tit 9) Industrial Hazardous Waste Management. The petitioner commenced a second article 78 proceeding seeking review of the second declaratory ruling.
The second CPLR article 78 proceeding has been consolidated with the.original article 78 proceeding and transferred to this court. However, the parties stated in court that the statutes and regulations under which the first declaratory ruling was made have been substantially altered and that the first article 78 proceeding may be deemed moot. This court therefore will only treat the issues raised in the second article 78 proceeding challenging respondent’s second declaratory ruling.
The second declaratory ruling dated July 30, 1982 held that used sulfuric acid generated by the petitioner’s manufacturing process, which is in fact always recycled and never discarded, is a statutory and regulatory waste and as such the petitioner is subject to regulation pursuant to the ECL and regulations thereon.
The standard of review in this CPLR article 78 proceeding is whether the challenged declaratory ruling is arbitrary and capricious or contrary to law. Thus if the respondent has any statutory authority for his determination and such determination has any rational basis, the court cannot interfere with the determination.
The respondent’s second declaratory ruling determined that the used sulfuric acid generated by the petitioner’s manufacturing process is a waste pursuant to both statutory and regulatory definitions. The petitioner has challenged the ruling on the ground that the regulatory definition of waste exceeds the respondent’s statutory authority and the statutory definitions of waste found in ECL 27-0303 (subd 7) and 27-0901 (subd 11) and on the further ground that the used sulfuric acid generated by the petitioner does not meet the regulatory definition of waste.
The statutory definition of waste found in the ECL is perhaps excessively simple. “Waste means * * * discarded *731 material”. The respondent’s definition of waste found at 6 NYCRR 366.1 (c) (2) defines waste as any solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining or agricultural operations or from community activities which is discarded, has served its original intended use and sometimes is discarded, or is a manufacturing or mining by-product and sometimes is discarded. The department has construed this definition to include materials which are sometimes discarded on an industry-wide basis.
The petitioner contends that the “sometimes discarded” standard exceeds the statutory definition of waste as “discarded material”. The petitioner contends that the clear and unambiguous meaning of the statutory definitions is that a material does not become a waste until it is in fact discarded or until the owner of such material intends to discard the material. Thus the petitioner’s used sulfuric acid, which is never discarded, would not meet the statutory definition of waste. However, this construction of the statutory definition, which would require looking at specific materials, leads to irrational results in a statute with an intent to regulate waste. Under this construction the respondent would be required to trace each and every piece of garbage or container of material. Such waste could not be regulated until it was in fact dumped. Thus, the harm which the statute is intended to cure would occur before the statute becomes applicable.
The petitioner has also suggested that the statutory definition, “waste is discarded material”, might be applied based upon the intent of the owner; i.e., a material becomes a waste as soon as the owner generated the intent to discard it. Not only would such a definition be totally unenforceable, it would lead to the anomalous result that a specific material becomes a waste before it is discarded, contrary to the statutory definition.
The regulatory definition of waste and the respondent’s construction of such definition look at waste as a generic material. Thus, if in the usual course of commercial business, any industry discards a generic material which has served its original intended use or which is a manufacturing or mining by-product, then such generic material is a *732 waste. That this constitutes a rational construction of the statutory definition is exemplified by the facts of this proceeding. The petitioner uses pure sulfuric acid in its manufacturing process. During the process this sulfuric acid is contaminated with certain impurities and becomes unusable in its contaminated form in the manufacturing process. Petitioner then ships the used sulfuric acid for purification and recycling. However, the petitioner must pay more than 10% more for recycling sulfuric acid than for new sulfuric acid. While such recycling is less expensive than legally discarding the used sulfuric acid, it is considerably more expensive than illegally or improperly discarding the used sulfuric acid. The used sulfuric acid is clearly a liability rather than an asset. Thus, in order to fully regulate hazardous wastes, with their great potential for harm the State must regulate generic materials and include those who seek to conserve resources and energy by recycling.
The petitioner also contends that the regulations promulgated by the respondent exceed statutory authority by reason of their inconsistency with the Federal Resource Conservation and Recovery Act and Environmental Protection Agency (EPA) regulations thereon. ECL 27-0900 provides that it is the purpose of title 9, the Industrial Hazardous Waste Management Act, to regulate the management of hazardous waste in a manner consistent with the Federal Resource Conservation and Recovery Act. Petitioner contends that because the respondent’s regulations are more strict than those of the EPA, in that the respondent seeks to regulate reused and/or recycled materials, that the New York State regulations are inconsistent with the Resource Conservation and Recovery Act.
ECL 27-0900 requires consistency with the Federal statute and not with regulations thereon. If the Legislature had intended to require that the respondent’s regulations be identical to the EPA’s regulations the Legislature would have stated such requirement. ECL 27-0903 ties into the EPA regulations for lists of hazardous wastes. ECL 27-0911 requires consistency with EPA regulations. It is thus clear that there is no requirement that the New York State regulations be either identical to or consistent with the Federal regulations. Furthermore, section 6929 of title 42 of the United States Code, one section of the Resource *733 Conservation and Recovery Act, provides “[njothing in this chapter shall be construed to prohibit any State or political subdivision thereof from imposing any requirements * * * which are more stringent than those imposed by such regulations.” Since the Federal act allows States to require stronger and more stringent regulations than the Federal program, the New York State regulations are clearly within the statutory mandate that regulations be consistent with the Resource Conservation and Recovery Act. Furthermore, there are explicit instances within the ECL which require more stringent regulation than the Federal program. Section 27-0913 requires compliance with the Solid Waste Management Act whether or not the waste is destined to be recycled. Title 7 of the act regulates recycling plants which are not yet covered in the Federal program. It is therefore the determination of this court that the respondent’s regulations do not exceed his statutory authority.
The remaining issue to be resolved is whether the respondent properly determined that the petitioner’s used sulfuric acid meets the regulatory definition of a waste as a material that is sometimes discarded. The petitioner submitted a petition for a declaratory ruling which included allegations that no industry discarded used sulfuric acid with a similar quantity and quality of impurities or contaminants. 6 NYCRR 619.1 (b) provides “If the petition does not contain sufficient information on which to render a declaratory ruling, a letter so stating and requesting additional information will be mailed by the department within five working days of the receipt of the petition.” If the respondent required further proof that a similar solution of used sulfuric acid was never discarded in the course of commercial business, then the respondent should have requested the petitioner to offer further proof on the issue. The respondent’s failure to request further proof, coupled with the prima facie proof contained in the petition for a declaratory ruling serves to transfer the burden of proof on the issue of whether this material is discarded or sometimes discarded to the respondent. The declaratory ruling issued by the respondent is completely devoid of any proof that a similar sulfuric acid mixture is discarded by indus *734 try. As such, the respondent’s declaratory ruling is determined to be arbitrary and capricious and without any factual basis.
This proceeding shall therefore be remanded to the respondent for a determination of whether a used or spent sulfuric acid mixture with a similar quantity and quality of impurities or contaminants is discarded in the usual course of industry and commerce.
Submit order.